IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPIRIT OF GIVING ORGANIZATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-1316-E |
| | § | |
| BOSS EXOTICS, LLC, and | § | |
| RODNEY JAMES MCGAFFEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On September 29, 2022, this Court issued an Order, (Doc. 30), that **GRANTED** Defendants' Motion to Compel Arbitration and Stay Proceedings, (Doc. 20), with reasoning to follow. This Memorandum Opinion and Order **VACATES** and **SUPERSEDES** that Order.

After reviewing the Motion to Compel Arbitration ("the Motion"), the relevant portions of the record, and the relevant law, the Court recognizes that the Motion should be, and therefore is, **GRANTED IN PART** with respect to Defendant Boss Exotics. The Motion, however, is **DENIED IN PART** with respect to Defendant Rodney James McGaffey. Nonetheless, the Court hereby **STAYS** all of Plaintiff's claims against all defendants and this proceeding, pending the resolution of arbitration.

## I. BACKGROUND

Plaintiff Spirit of Giving Organization ("Plaintiff"), is a non-profit public benefit corporation organized in California. Sometime in March of 2021, Plaintiff's President and CEO, Taquila Trammell ("Trammell"), reached out to Defendant Boss Exotics, LLC ("Boss Exotics") to purchase a Rolls Royce Wraith ("the Vehicle"). Boss Exotics informed Trammell that Plaintiff would have to lease the Vehicle for 180 days before being given the opportunity to purchase it.

Defendant Rodney James McGaffey ("McGaffey"), the sole owner and CEO of Boss Exotics, sent Plaintiff a document entitled "Contract Agreement" (hereafter, "Lease Agreement") (Doc. 26-1, Ex. A-1: Lease Agreement). On March 24, 2021, Trammell, acting on behalf of Plaintiff, reviewed and executed the Lease Agreement. Trammell electronically initialed the bottom of each page in signature boxes labeled "Lessee's Initials" and electronically signed the final page of the contract in the signature boxes labeled "Lessee's Printed Name" and "Signature." (Doc. 26-1, Ex. A-1: Lease Agreement, pgs. 1-5). The contract contained no signature boxes for Boss Exotics.

In the Lease Agreement—which identifies Plaintiff as "lessee" and Boss Exotics as "lessor"—Plaintiff agreed to lease the Vehicle for a term of 180 days—which "[could] be renewed at the end of the term if no defaults occur[ed]"—for a total cost of $101,617.74. (Doc. 26-1, Ex A-1: Lease Agreement, pg. 1). The Lease Agreement required Plaintiff to make a "nonrefundable payment in the amount of $75,000 . . . within 7 days of the date of execution of [the] contract[,]" with the remaining balance to be prorated over six monthly payments. (Doc. 26-1, Ex A-1: Lease Agreement, pg. 1). The Lease Agreement also contained the following arbitration clause:

> The lessee agrees that if any disputes were to arise on their behalf related to the vehicle or this contract that they agree to waive their right to file legal suit in court and instead seek arbitration which would be at their costs only and not shared by lessor. "Claims" has the broadest possible meaning, and included but is not limited to any and all disputes, claims or controversies, in law or in equity, between the parties related in any way to the vehicle and arising out of or relating in any way to . . . the application for and the terms of and enforceability of the sale, lease or renting of the vehicle including any deposit arrangement regarding the vehicle . . . At the request of either party, any claim shall be decided in binding arbitration before your choice of the American Arbitration Association "The AAA," or any other Arbitration Organization that you choose and that we approve of in writing ("The Arbitration Organization"). The Arbitration shall be conducted under the then current rules for the Arbitration Organization . . . . The Parties agree that once one of the Parties has elected to arbitrate, binding arbitration is the exclusive method for resolving all claims and that by entering into this agreement, the Parties are waiving their right to a jury trial and their right to bring or participate in any class

action in court or through Arbitration . . . . The arbitrators shall be attorneys or retired judges and shall be selected in accordance with the applicable rules. . . . The Parties acknowledge and agree that The Federal Arbitration Act (9 U.S.C 1 et seq.) shall govern any arbitration under this Agreement . . . . You and we agree that the mutual promises in this Agreement constitute a consideration necessary to make this Agreement enforceable even if we do not enter into any further Agreements concerning the vehicle. This Agreement shall survive the termination, rescission, or payment in full of any other sale, leasing or rental Agreement between the parties. Either you or we may choose to have any dispute between us decided by arbitration and not in court. If a dispute is arbitrated, you and we will give up our right to trial by court or by a jury. . . .

(Doc. 26-1, Ex A-1, pgs. 4-5). It is undisputed that Plaintiff failed to make the non-refundable deposit of $75,000 by April 1, 2021, seven days after the contract's execution. (*see* Doc. 25, Decl. of Taquila Trammell, ¶ 10) ("Between April 2nd and April 9th, Spirit of Giving deposited a total of $75,397.37.").

Trammell testified, via sworn declaration, that: (1) Plaintiff hired several companies to transport the Vehicle from Dallas, Texas to California, yet Boss Exotics refused to allow shipment; (2) Boss Exotics informed Plaintiff on April 22, 2021, that the Vehicle had been sent in for maintenance; and (3) Plaintiff—through counsel—sent Boss Exotics a letter demanding the return of the money Plaintiff deposited on April 23, 2021. (Doc. 25, Decl. of Taquila Trammell, ¶ 12).

On April 23, 2021, Boss Exotics responded to Plaintiff's demand letter with a document entitled "Legal Notice," which Plaintiff introduced into evidence as an exhibit attached to Trammell's sworn declaration. (Doc. 25-1, Ex. A: Legal Notice). In the Legal Notice, Boss Exotics (1) explained the maintenance and shipment issues and (2) stated that Plaintiff had defaulted on the Lease Agreement by failing to make the required deposit within seven days of the execution of the Lease Agreement. (Doc. 25-1, Ex. A: Legal Notice, pg. 1). Boss Exotics informed Plaintiff that Boss Exotics does not allow third-party shipment unless customers have provided insurance and authorized the third-party to act as the customer's agent. (Doc. 25-1, Ex. A: Legal Notice, pg.

1). According to the Legal Notice, Boss Exotics did not receive the required proof of insurance until April 13, 2021; however, the Legal Notice indicated that, on April 12, 2021, a service light in the Vehicle came on, which is why Boss Exotics sent the Vehicle in for maintenance. (Doc. 25-1, Ex. A: Legal Notice, pg. 1). Finally, the Legal Notice represented that, as of April 23, 2021, Boss Exotics had received Plaintiff's insurance and—despite Plaintiff's default—initiated the process of having the Vehicle shipped to Plaintiff. (Doc. 25-1, Ex. A: Legal Notice, pg. 1).

On June 8, 2021, Plaintiff filed this action against Boss Exotics and McGaffey (collectively, "Defendants"). (Doc. 1). On June 28, 2021, Plaintiff filed an Amended Complaint with this Court, alleging: (1) violations of the Texas Deceptive Trade Practices Act ("DTPA"); (2) common-law fraud; (3) negligent misrepresentation; (4) unjust enrichment; and (5) money had and received. (Doc. 8). On January 13, 2022, Defendants filed their Motion to Compel Arbitration and Stay Proceedings ("the Motion")—requesting that the Court: (1) compel Plaintiff to arbitrate its claims against Boss Exotics and McGaffey; (2) designate and appoint an arbitrator; and (3) stay the remaining issues in this proceeding should any issues not be referred to arbitration. (Doc. 20).

## II.   LEGAL STANDARD

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit a trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

When considering a motion to compel arbitration, courts engage in a two-step inquiry. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). In step one, courts

determine "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citations omitted). To make this determination, courts ask two questions: (1) is there a valid agreement to arbitrate between the parties? and (2) does the dispute in question fall within the scope of that arbitration agreement? *Id.* (citations omitted). If the answer to both questions in step one is "yes," then courts proceed to step two and determine "'whether constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

However, when an agreement to arbitrate "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala v. Supreme Prod. Servs., Inc.,* 830 F.3d 199, 202 (5th Cir. 2016) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). "Delegation clauses are enforceable and transfer [a] court's power to decide arbitrability questions to the arbitrator." *Id.* The presence of a delegation clause obligates a court to "refer a claim to the arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Accordingly, if an arbitration agreement contains a delegation clause, "[a] court's analysis is limited." *Id.* In such a context, a court first determines "whether the parties entered into any agreement to arbitrate at all[;]" if so, the only remaining question is whether the delegation clause is valid. *Id.* at 201-02 (emphasis in original).

In determining whether parties entered into an agreement to arbitrate, courts must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (some internal quotation marks omitted) (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)).

When analyzing arbitration agreements that potentially contain a delegation clause, the Fifth Circuit has said that:

> [Courts] first look to see if an agreement to arbitrate has been formed, then determine if it contains a delegation clause. If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, [courts] will consider the clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator. Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists. *See Kubala*, 830 F.3d at 202. Since *Kubala*, we have reiterated that the first step of the test is limited to contract formation.

*Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir, 2018) (footnote omitted). The Court next considers the evidence before the Court as to whether Plaintiff formed an agreement to arbitrate with Boss Exotics and McGaffey and the effect of any such agreements on this proceeding.

## III.   ANALYSIS

Plaintiff resists arbitration—asserting (1) Defendants did not provide competent evidence of an agreement to arbitrate; (2) Defendants fail to establish the existence of an agreement to arbitrate; (3) the Lease Agreement's arbitration provisions are substantively unconscionable; and (4) those unconscionable provisions pervade the entire Lease Agreement, preventing severance.

For the reasons discussed below, the Court concludes that (1) Defendants provided competent evidence of an arbitration agreement; (2) there is an arbitration agreement between Plaintiff and Boss Exotics; (3) there is no arbitration agreement between Plaintiff and McGaffey; (4) the arbitration agreement at issue contains delegation provisions; (5) Plaintiff does not attack the validity of those provisions, precluding the Court from considering its unconscionability arguments; (6) Defendants' request that the Court appoint an arbitrator is denied; and (7) Plaintiff's claims against all Defendants are stayed.

**A.     Defendants Produced Competent Evidence of an Agreement to Arbitrate.**

Plaintiff contends that Defendants have not presented the Court with competent evidence of an agreement to arbitrate, objecting to the Lease Agreement attached to the Motion. The Court rejects Plaintiff's arguments and concludes that it may consider the Lease Agreement in determining whether to compel arbitration.

Defendants' Motion to Compel Arbitration attached a copy of the Lease Agreement that the Parties are alleged to have entered, which contained provisions requiring arbitration. (Doc. 21, Ex. A: Lease Agreement). At that time, Defendants did not include a declaration authenticating the Lease Agreement. In response, Plaintiff objected to the Lease Agreement under Federal Rules of Evidence 802 and 901. FED R. EVID. 802 (Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.); FED. R. EVID. 901 (providing the requirements for authenticating or identifying evidence). That is, Plaintiff argues that the Lease Agreement—and thus the arbitration provisions contained therein— are inadmissible because (1) the Lease Agreement was not authenticated and (2) the Lease Agreement constitutes inadmissible hearsay. *See* FED. R. EVID. 802, 901.

First, Defendants' reply brief, (Doc. 26), attaches a sworn affidavit from McGaffey's, which (1) explains he is "the Chief Executive Officer and a records custodian of Boss Exotics . . . familiar with the records-keeping procedures of Boss Exotics" and (2) attests to the authenticity of the Lease Agreement—attaching another copy of the Lease Agreement. (Doc. 26-1, Aff. of James McGaffey at 1-2 & Ex. A-1, Lease Agreement). Under Federal Rule of Evidence 901(b)(1), McGaffey's testimony is sufficient to authenticate the document as constituting an accurate copy

of the Lease Agreement. *See* Fed. R. Evid. 901(b)(1) ("Testimony that an item is what it is claimed to be[]" satisfies the requirement for authentication).[1]

Second, the Lease Agreement is not inadmissible hearsay under Rule 802 because "[s]igned instruments, such as wills, *contracts*, and promissory notes are writings that have independent legal significance[] and are non-hearsay." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (emphasis added) (asserting that a contract is a "verbal act" with "legal reality independent of the truth of any statement contained in it"). Thus, the Court concludes that the Lease Agreement attached to the Defendants' Motion is competent evidence of an agreement to arbitrate disputes between the Parties.

### B.     Defendants' Motion to Compel Arbitration is Granted with Respect to Boss Exotics but Denied with respect to McGaffey.

Both defendants in this case—Boss Exotics and McGaffey—have moved to enforce the arbitration provisions contained in the Lease Agreement. Plaintiff contends that the Motion must be denied because Defendants cannot establish that they formed an agreement to arbitrate with Plaintiff. Specifically, Plaintiff argues that Defendants cannot establish the existence of an arbitration agreement because Defendants neither signed the Lease Agreement nor engaged in conduct manifesting their intent to be bound by it.

For the reasons discussed below, the Court concludes that Boss Exotic—as a party to the Lease Agreement—manifested its intent to be bound to the contract through its conduct. Thus, Boss Exotics is party to a binding arbitration agreement with Plaintiff and is entitled to move for

---

[1] There is no requirement under Rule 901 that evidence produced to authenticate a document be produced simultaneously with the document attached to a party's motion and initial briefing. Fed. R. Evid. 901(a), (b).

its enforcement. McGaffey, on the other hand, is not party to the Lease Agreement and is thus unable to enforce the Lease Agreement's arbitration provisions against Plaintiff.

1.    *Plaintiff formed an agreement to arbitrate with Boss Exotics.*

The question of whether the Parties entered into an agreement to arbitrate is governed by state contract law. *Id.* at 202. [2] Under Texas law, the party seeking to compel arbitration bears the initial burden to establish the existence of an agreement to arbitrate. *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd). The party seeking to compel arbitration must prove by a preponderance of the evidence that such an agreement exists. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019). If the party seeking to compel arbitration establishes the existence of an arbitration agreement, the burden shifts to the party opposing arbitration to show why the agreement should not be enforced. *In re Sands Bros. & Co.*, 206 S.W.3d 127, 130 (Tex. App.—Dallas 2006, no pet.); *see Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297, 301 (5th Cir. 2004).

"Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012)) (internal quotation marks omitted). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what

---

[2] While the Lease Agreement contains no choice-of-law provision, both parties rely on Texas law in making their arguments in support of or in opposition to arbitration, and neither party has objected to the application of Texas law. Thus, the Court will apply Texas contract law in determining whether a valid agreement to arbitrate has been formed. *See Kalenga v. Irving Holdings, Inc.*, No. 3:19-CV-1969-S, 2020 WL 7496208, at *5 (N.D. Tex. Dec. 20, 2020) ("When parties fail to raise choice-of-law issues, the Court need not raise the issue *sua sponte* and the parties are deemed to have acquiesced to the law of the forum.") (citation omitted).

the parties said and did and not on their subjective state of mind." *In re Capco*, 669 F.3d at 280 (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)) (internal quotation marks omitted). Additionally, a valid contract requires consideration. *Id.*

The record indicates that Boss Exotics offered, and Plaintiff accepted, the terms of the Lease Agreement, including the arbitration provisions. On March 24, 2021, Boss Exotics offered to lease the Vehicle to Plaintiff when it electronically transmitted an unsigned copy of the Lease Agreement. (Doc. 26-1, pg. 10). Trammell, as President and CEO of Plaintiff, reviewed the Lease Agreement and accepted the offer via electronic signature. (Doc. 26-1, pg. 10). "'Texas courts have consistently held that 'a party's signature on a written contract is strong evidence that the party unconditionally assented to its terms.'" *Gallagher v. Vokey*, 860 F.App'x 354, 358 (5th Cir. 2021) (quoting *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 666 (Tex. App.—Dallas 2012, pet. denied)). As such, the Court must conclude that Boss Exotics has established through evidence that it offered, and Plaintiff accepted, the terms of the Lease Agreement, including the arbitration provisions contained therein.

Furthermore, it is undisputed that the Parties agreed to exchange valuable consideration. Specifically, Boss Exotics agreed to lease the Vehicle to Plaintiff for a term of 180 days, and Plaintiff agreed to pay $101,617.74 and engage in arbitration over disputes relating to the Vehicle or the Lease Agreement. (Doc. 26-1, pg. 7). Thus, Boss Exotics has established the element of consideration.

Plaintiff contends that Boss Exotics cannot establish that it formed an agreement to arbitrate with Plaintiff because Boss Exotics did not manifest assent to be bound by the Lease Agreement through its signature or its conduct. "Signatures are not required as long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both

signatures as a condition precedent to it becoming effective as a contract." *Huckaba*, 892 F.3d at

689 (quoting *Perez v. Lemarroy*, 592 F.Supp.3d 924, 930 (S.D. Tex. 2008) (citing, in turn, *ABB*

*Kraftwerke Aktiengesellchaft v. Brownsville Barge & Craine, Inc.*, 115 S.W.3d 287, 292 (Tex.

App—Corpus Christi 2003, pet. denied.))) (internal quotation marks omitted). Plaintiff does not

contend, nor does the record reflect, that Boss Exotic's signature was a condition precedent to the

Lease Agreement taking effect.[3]

Where, as here, "there is no evidence to show the parties intended the signing of the

agreement to be a condition precedent, the evidence must still demonstrate that the non-signatory

party intended to be bound by the agreement." *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706

(Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Wright v. Hernandez*, 469 S.W.3d 744, 760

(Tex. App.—El Paso 2015, no pet.). In determining whether a non-signatory party to a contract

intended to be bound by an arbitration agreement contained therein, Texas courts have considered

various actions taken by the non-signatory. *Wright*, 469 S.W.3d at 761. Those actions include the

party's "act of drafting the arbitration agreement, its actions in maintaining the agreement as a

business record, and its actions in moving to enforce the agreement[.]" *Wright*, 469 S.W.3d at 761

(citing *Dish Network L.L.C. v. Brenner*, No. 13–12–00564–CV, 2013 WL 3326640, at *5 (Tex.

---

[3] The Lease Agreement (1) does not contain a signature block for a Boss Exotics representative or employee and (2) does not state that the signature of both parties was required for it to take effect, and Plaintiff has not provided indicating that the parties agreed that Boss Exotic's signature was required for the Lease Agreement to take effect. *See Mid-Continent*, 323 S.W.3d at 158-59 (holding that a signature by the party seeking to enforce insurance policies was not a condition precedent to enforcement because there was "no language in the policies requiring both parties to sign the insured contracts, and there was no evidence raising a fact issue of the parties' intent to require all parties to the subcontract to sign it as a condition precedent to the subcontract's validity"); *see also*, *Wright*, 469 S.W.3d at 760 (holding that—despite the absence of an its signature in the provided signature block—an employer's signature was not a condition precedent to the enforceability of an employment agreement because (1) the agreement did not expressly require the signature, (2) the agreement did not contained any reference indicating that the signature was a contemplated condition precedent, and (3) the employee provided no evidence establishing that the signature was a condition precedent).

App.—Corpus Christi 2013, no pet.); *In re Brown & Root, Inc.*, No. 05–98–00689–CV, 1998 WL 325692, at *2 (Tex. App.—Dallas June 18, 1998, orig. proceeding)); *see, e.g.*, *Soni v. Solera Holdings, Inc.*, No. 3:20-CV-02925-M, 2021 WL 1726891, at *5 (N.D. Tex. Mar. 23, 2021), *aff'd sub nom. Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046 (5th Cir. May 4, 2022) (compelling arbitration after determining a non-signatory party manifested its intent to be bound to an agreement "through its actions of drafting, recording, and enforcing the arbitration agreement[.]"). Moreover, a party may manifest its intent to be bound by a contract by "beginning the performance on the contract work." *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc*., 323 S.W.3d 151, 157 (Tex. 2010).

The record indicates that Boss Exotics assented to the arbitration provisions contained in the Lease Agreement. Although the Lease Agreement was not signed by a representative of Boss Exotics, Boss Exotics' conduct manifested its intent to be bound by it. First, Boss Exotics drafted the Lease Agreement to include the arbitration provision and sent it to Plaintiff to be signed. (Doc. 26, pg. 3, ¶ 8). Second, McGaffey's conduct manifested Boss Exotics' intent to be bound insofar as he, as Boss Exotics' custodian of records, recorded the Lease Agreement and maintained it as a business record. (Doc. 26-1, Aff. Of James McGaffey, pg. 1). Third, Boss Exotics manifested its intent to be bound by the Lease Agreement when it moved to enforce the arbitration clause through the Motion. (Doc. 20). Finally, Plaintiff entered evidence to the record—the Legal Notice— indicating that Boss Exotics manifested intent to be bound the Lease Agreement when it began performance by initiating the process of delivering the Vehicle to Plaintiff. (Doc. 25-1, Ex. A: Legal Notice, pg. 1).

Plaintiff insists that Boss Exotic did not manifest assent to the Lease Agreement because Boss Exotic did not intend to sell Plaintiff the Vehicle. To support this claim, Plaintiff points to

the fact that Boss Exotics failed to ship the Vehicle to Plaintiff and refused to allow delivery through Plaintiff's preferred transport company. Additionally, Plaintiff relies on the Legal Notice, alleging that it indicates that the Lease Agreement was merely an "offer" to be rescinded.

These arguments, however, are unavailing. First, Plaintiff ignores the terms of the Lease Agreement that was signed by its President and CEO. The Lease Agreement, by its very terms, was for the *lease* of the Vehicle, not for its purchase. The Lease Agreement explicitly states as much in its second paragraph, which states "[t]his contract is strictly for leasing the vehicle only[;] [t]his is not a finance or purchase offer[.]" (Doc. 26-1, Ex. A: Lease Agreement, pg. 1). Moreover, Trammell's testimony indicates that she was told by Boss Exotics that Plaintiff would have to lease the Vehicle for a term of 180 days before she would be given an opportunity to purchase it. (Doc. 25, Decl. of Taquila Trammell, ¶ 3). Finally, Plaintiff's own evidence indicates that Boss Exotics did intend to be bound by the Lease Agreement insofar as Boss Exotics initiated the process of delivery. (Doc. 25-1, Ex. A: Legal Notice, pg. 1). As such, Plaintiff's contention that Boss Exotics did not intend to sell the Vehicle to Plaintiff does nothing to contradict the evidence in the record showing that Boss Exotics manifested its intent to *lease* the Vehicle to Plaintiff per the terms of the Lease Agreement.

Thus, the record reflects that Boss Exotics engaged in conduct manifesting its intent to be bound by the terms of the Lease Agreement—including but not limited to the arbitration provisions contained therein. The above facts demonstrate that the Parties (1) had a meeting of the minds— reflected by the written contract; (2) consented to the terms of the written contract; and (3) otherwise received execution and delivery of the mutual, binding contract. Having determined that Boss Exotics has established requisite elements of contract formation through evidence, which

Plaintiff has failed to rebut, the Court concludes that Plaintiff formed an agreement to arbitrate with Boss Exotics.

> 2. *Plaintiff did not form an agreement to arbitrate with McGaffey, and McGaffey may not enforce Plaintiff's agreement to arbitrate with Boss Exotics.*

Having found that an arbitration agreement exists between Plaintiff and Boss Exotics, the Court next turns to question of whether such an agreement exists between Plaintiff and McGaffey. As discussed above, "[a] party seeking to compel arbitration must first show that a valid arbitration exists between the parties, [which is] a determination governed by traditional state contract principles." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citation omitted). "Under these principles, the court must determine whether an arbitration agreement exists based on the parties' intent as expressed in the terms of the contract." *Id.* (citing *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009)).

"The parties' intent controls even when a non-signatory to the arbitration agreement seeks to enforce it." *Id.* Where, as here, parties "dispute whether 'a non-signatory can compel arbitration pursuant to an arbitration clause,' their dispute 'questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide.'" *Id.* (citing *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (additional citations omitted). While "arbitration agreements apply to non-signatories 'only in rare circumstances,' the question of '[w]ho is actually bound by an agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" *Id.* (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 355, 358 (5th Cir. 2003)) (alterations in original). Thus, the question here is whether the Lease Agreement between Plaintiff and Boss Exotics evinces and intent to bind McGaffey. The Court concludes that it does not.

Unlike with Boss Exotics, the record does not indicate that McGaffey is a party to the Lease Agreement. McGaffey did not sign the Lease Agreement. While the absence of McGaffey's signature is not dispositive, the factors weighing in favor of the Court's conclusion that Boss Exotics manifested intent to be bound by the arbitration agreement to do not weigh in favor of the same conclusion with respect to McGaffey. Unlike Boss Exotics—to whom the Lease Agreement refers to explicitly as the "lessor"—McGaffey's name appears nowhere in the contract. Nor does the Lease Agreement purport to apply to officers or employees of Boss Exotics. Thus, the Court concludes that the Lease Agreement does not evince an intent to bind McGaffey. *See In re Rubolia*, 334 at 224 (allowing individual defendants to compel arbitration because the contract in question explicitly provided that non-signatory officers and representatives were party to the arbitration agreement). As such, the Court concludes that Plaintiff did not enter into an agreement to arbitrate with McGaffey.

Moreover, McGaffey is not entitled to enforce the agreement to arbitrate between Plaintiff and Boss Exotics. In determining whether a non-party who has not signed a contract may enforce arbitration provisions contained therein, courts "are guided by 'traditional principles of state law,' which 'allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver[,] and estoppel." *Halliburton*, 921 F.3d at 531 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (some internal quotations omitted). McGaffey has not established nor asserted that any of these doctrines are available to him. Thus, McGaffey is not entitled to compel arbitration of Plaintiff's claims against him.

3.      *The Lease Agreement contains a delegation clause.*

The Court concludes that the arbitration agreement at issue here contains delegation provisions referring gateway questions of arbitrability to the arbitrator. "Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold*, 890 F.3d at 551 (citing *Rent-A-Center*, 561 U.S. at 68-70). "However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Id.* at 551-52 (citing *First Options of Chi., Inc.*, 514 U.S. at 944-45).

"[P]arties can provide clear and unmistakable evidence that they intended an arbitrator to decide substantive arbitrability issues . . . by crafting a broad arbitration clause . . . 'purporting to cover all claims, disputes, and other matters relating to the contract or its breach, [thus] creat[ing] a presumption of arbitrability.'" *Halliburton*, 921 F.3d at 538 (5th Cir. 2019) (quoting *Am. Realty Tr., Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex. App.—Dallas 2002, pet. denied)) (additional citations omitted) (second alteration in original). "Simply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is 'broad.'" *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985) (internal quotations omitted).

The Court has determined that the Lease Agreement contains a broad arbitration clause insofar as it evinces an agreement by the Parties to submit to the arbitrator any dispute arising from the contract. The Lease Agreement states, in relevant parts, that:

- "The lessee agrees that if *any disputes* were to arise on their behalf related to the vehicle *or this contract* that they agree to waive their right to file legal suit in court and instead seek arbitration[;]"

- "At the request of either party, *any claim shall be decided in binding arbitration* before [the lessee's] choice of the American Arbitration Association . . . , or any other Arbitration Organization that [the lessee] choose[s] and that [lessor] approve[s] of in writing[;]"

- "The Parties agree that once of the Parties has elected to arbitrate, binding arbitration is the exclusive method for resolving *all claims*[;]"

- "Either [lessee] or [lessor] may choose to have *any dispute* between [them] decided by arbitration and not in court[;]" and

- " 'Claims' has the broadest possible meaning, and included [sic] but is not limited *to any and all disputes*, claims or controversies, in law or in equity, between the parties *related in any way* to the vehicle and *arising out of or relating in any way to . . . the terms of and enforceability of the sale, lease . . .* of the vehicle[;]"

(Doc. 26-1, Lease Agreement, pgs. 7-8) (emphases added). The Court concludes that this language, taken together, "'clearly and unmistakably' provides [that] the validity and enforceability of the arbitration agreement [are] to be decided by the arbitrator." *Maravilla.*, 783, F.App'x at 396 (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)).

This language is similar to the delegation clause in *Kubala*, which provided: "[t]he arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute." *Kubala*, 830 F.3d at 204. It also mirrors the language in *Maravilla*, which delegated to the arbitrator "*any and all claims* or causes of action arising out of or *relating to this Agreement* [] including, without limitation, matters relating to . . . *enforceability* of all or any parts of this Agreement." *Maravilla*, 783 F.App'x at 396 (emphasis added).

Moreover, courts in this district have held that similar language constitutes a valid delegation clause referring gateway issues of arbitrability to the arbitrator. *See, e.g., Gassaway v. Beacon Fabrication, LLC*, No. 3:20-CV-983-L-BH, 2021 WL 1523008, at *6 (N.D. Tex. Feb. 24, 2021), report and recommendation adopted as modified, No. 3:20-CV-983-L, 2021 WL 925800 (N.D. Tex. Mar. 11, 2021) (agreement stated that "*[a]ny issue of dispute* concerning the formation, *applicability, interpretation, enforceability* . . . shall be subject to arbitration as provided herein")

(emphasis added); *Clark v. Nordstrom*, No. 3:18-CV-2100-D, 2019 WL 3428947, at *4 (N.D. Tex. July 30, 2019) (agreement stated that covered "disputes also include *without limitation* disputes arising out of or to the *interpretation or application* of this Agreement") (emphasis added); *Gay v. Manchester Mgmt., LLC*, No. 3:18-CV-1378-D, 2018 WL 5255267, at *5 (N.D. Tex. Oct. 22, 2018); (agreement stated that *"[a]ll claims, disputes, or controversies arising out of or related to this Agreement*, including but not limited to its validity, scope, interpretation, enforceability . . . shall be determined by binding arbitrations as described herein") (emphasis added). The Court finds no reasons to deviate from these decisions and concludes that the Lease Agreement contains a broad delegation clause referring gateway questions of arbitrability to the arbitrator.[4]

> 4.  *Plaintiff's unconscionability arguments do not attack the validity of the delegation provisions and thus must be heard by the arbitrator.*

Having determined that the Lease Agreement delegates gateway questions of arbitrability, the Court next turns to whether there is a "challenge to the delegation clause itself." *Edwards*, 888 F.3d at 744. In the alternative to its argument that an agreement to arbitrate was never formed, Plaintiff argues that the Lease Agreement's arbitration clause is unenforceable because it is substantively unconscionable. Specifically, Plaintiff contends that the clause improperly forecloses the Plaintiff's statutory remedies insofar as it (1) does not explicitly authorize the arbitrator to award common law damages and (2) does not comply with the Texas Deceptive Trade Practice's requirements for waiving the right to attorney's fees.

---

[4] In reaching this conclusion, the Court recognizes that Defendants did not raise the matter of the delegation clause in the Motion. This, however, does not prevent the Court from relying on the existence of the clause in its ruling. "When an issue or a claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

These arguments attack neither the formation of an agreement to arbitrate nor the validity of the delegation provisions. Instead, they attack the *enforceability* of the arbitration clause due to external legal constraints—an issue courts may not consider when there is a valid delegation clause. *See Kubala*, 830 F.3d at 202. Under Texas law, unconscionability challenges of the type raised by Plaintiff are a matter of enforceability, not contract formation. *See* TEX. BUS. & COMM. CODE § 2.302(a) (permitting a court refuse to enforce a contract based on unconscionability); *Ridge Natural Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105 129 (Tex. App.—El Paso 2018, no pet.) (unconscionability arguments "represent affirmative defenses against the enforceability of a presumptively formed contract") (citing *In re FirstMeritBank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding)). Because Plaintiff's unconscionability arguments attack the enforceability of the arbitration clause rather than the validity of the delegation provisions in particular, they raise issues for the arbitrator—not the Court—to decide. *See Edwards*, 888 F.3d at 744 ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself . . . [c]hallenges to the arbitration agreement as a whole are to be heard by the arbitrator."); *see also Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, *2 (5th Cir. Aug. 6, 2021) (affirming the district court's grant of defendant's motion to compel because "[j]ust like the employee in *Rent-A-Center* failed to challenge the specific delegation clause by arguing that the entire arbitration agreement was unconscionable, [plaintiff] fails to specifically challenge the delegation provision by arguing that the entire arbitration provision was procured by fraud") (citing *Rent-A-Center*, 561, U.S. at 72). Accordingly, the Court pretermits any further discussion of this issue. *See Edwards*, 888 F. 3d at 744.

Because the record indicates that Plaintiff and Boss Exotics entered into an arbitration agreement that delegates threshold questions of arbitrability to the arbitrator, the Court **GRANTS**

Defendant's Motion to Compel with respect to Boss Exotics notwithstanding Plaintiff's unconscionability arguments—which must be heard by the arbitrator. Because the record indicates neither that Plaintiff and McGaffey entered into an arbitration agreement nor that McGaffey may enforce Plaintiff's arbitration agreement with Boss Exotics, the Court **DENIES** the Motion with respect to McGaffey.

### C.     Defendant's request for the Court to appoint an arbitrator is denied.

Defendants request that the Court designate and appoint an arbitrator. "[T]he FAA expressly favors the selection of arbitrators by the parties rather than courts." *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 490 (5th Cir. 2012) (citations omitted). The Fifth Circuit has stated:

> [A]s a part of the very limited jurisdiction granted to the courts under the FAA to intervene in the arbitral process before an award, 9 U.S.C. § 5 authorizes a court to intervene to select an arbitrator upon application of a party in three instances: (1) if the arbitration agreement does not provide a method for selecting arbitrators; (2) if the arbitration agreement provides a method for arbitrators but any party to the agreement has failed to follow that method; or (3) if there is a lapse in the naming of an arbitrator or arbitrators.

*Id.* (citation and internal quotation marks omitted). Defendants have not established that this case presents any of these situations.

The Lease Agreement's arbitration clause expressly provides a method of selecting arbitrators. The Lease Agreement states that "any claim shall be decided in binding arbitration before [the lessee's] choice of the American Arbitration Association . . . or any other Arbitration Organization that [the lessee] chooses and that the [lessor] approve[s] of in writing." (Doc 26-1, pg. 7). Further, it states that "[t]he arbitrator shall be attorneys or retired judges and shall be selected in accordance with the applicable rules" of either the AAA or another arbitration organization selected by Plaintiff and agreed upon by Boss Exotics. (Doc 26-1, pg. 7). Defendants

have not raised any argument as to why the Court should set aside the Parties' agreed upon method of appointing an arbitrator. Moreover, because arbitration has not yet begun, Defendants have not—and indeed cannot—establish that the Parties have failed to follow the agreed upon method or there has been a lapse in the naming of an arbitrator.

Accordingly, Defendants' request for the Court to appoint an arbitrator is **DENIED**. If, after this decision is issued, a basis can be shown under 9 U.S.C. § 5 for the Court to select an arbitrator, Defendants may move anew for this relief. *See BP Exploration Libya*, 689 F.3d at 491.

### D.      All claims and this proceeding are stayed.

The Federal Arbitration Act permits staying a case pending arbitration. See 9 U.S.C. § 3. "[A] stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration[.]" *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Thus, a stay of all claims against Boss Exotics is warranted because, as discussed above, it may enforce the Lease Agreement's arbitration clause.

Further, while McGaffey may not enforce the arbitration agreement, a stay of Plaintiff's claims against him is also warranted. The Fifth Circuit has identified three factors that weigh on whether claims against a non-signatory to an agreement to arbitrate may be stayed when compelling arbitration over claims against parties to such an agreement: "(1) the arbitrated and litigated disputes must involve the same operative facts; (2) the claims asserted in the arbitration must be 'inherently inseparable;' and (3) the litigation must have a 'critical impact' on the arbitration." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Id.*

In its operative complaint, Plaintiff asserts its claims against Defendants collectively. Because each of these claims incorporates by reference the facts pled against both defendants, the claims against McGaffey are (1) based on the same operative set of facts and (2) otherwise identical to the claims against Boss Exotics. Litigating Plaintiff's claims against McGaffey could potentially influence the arbitration of Plaintiff's claims against Boss Exotics insofar as such litigation would require the Court to make a number of factual determinations relating to the claims against both defendants. Permitting Plaintiff's claims against McGaffey to proceed in this Court when Plaintiff's claims against Boss Exotics proceed to arbitration would "undermine the arbitration proceedings between [Plaintiff and Boss Exotics], thereby thwart[ing] the federal policy in favor of federal arbitration." *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002). Accordingly, the Court **STAYS** this proceeding pending resolution of arbitration between Plaintiff and Defendant Boss Exotics.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Compel Arbitration, (Doc. 20), is **GRANTED IN PART** with respect to Defendant Boss Exotics. The Motion, however, is **DENIED IN PART** with respect to McGaffey. Nonetheless, the Court hereby **STAYS** all of Plaintiff's claims against both defendants, pending the resolution of arbitration between Plaintiff and Defendant Boss Exotics. The Court **STAYS** this proceeding pending resolution of arbitration between Plaintiff and Defendant Boss Exotics

The Clerk of Court is hereby **DIRECTED** to administratively close this case, pending completion of arbitration between Plaintiff and Boss Exotics. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) (explaining that district courts frequently make use of administrative closure to remove inactive cases from their pending dockets). The case may be re-

opened in the future, without payment of filing fees, upon written motion from any party after conclusion of the arbitration proceedings, subject the limited judicial review set forth in the Federal Arbitration Act.

      **SO ORDERED:** January 31, 2023.

Ada Brown
UNITED STATES DISTRICT JUDGE